953 P.2d 569

Lewis W. POE, Appellant–Appellant,

v.

HAWAI'I LABOR RELATIONS BOARD, State of Hawai'i, Appellee–Appellee.

and

Lewis W. POE, Appellant–Appellant,

v.

HAWAI'I LABOR RELATIONS BOARD, State of Hawai'i, Appellee–Appellee,

and

Calvin M. Tsuda, Deputy Director, Department of Transportation, State of Hawai'i, or by substitution, the Director of the Department of Transportation, State of Hawai'i, Respondent–Appellee–Appellee.

Nos. 19858, 20899.

Supreme Court of Hawai'i.

March 31, 1998.

Reconsideration Denied April 22, 1998.

Lewis W. Poe, appellant-appellant pro se.

Valri Lei Kunimoto, on the briefs, Honolulu, for appellee-appellee Hawai'i Labor Relations Board.

Ruth I. Tsujimura and James E. Halvorson, Deputy Attorneys General, on the briefs, for respondent-appellee-appellee Director of the Department of Transportation in No. 20899.

Before MOON, C.J., and LEVINSON, NAKAYAMA and RAMIL, JJ., and NAKATANI, Circuit Judge, in place of KLEIN, J., recused.

NAKAYAMA, Justice.

These two cases, Nos. 19858 and 20899, arise from a strike of Hawai'i Government Employees Association (HGEA) workers in April, 1994.

Lewis Poe [1] is a Tower Operator I at Aloha Tower for the Harbors Division, Department of Transportation, State of Hawai'i, and is a member of bargaining unit 03.

Calvin Tsuda [2] is the Deputy Director of Transportation, Harbors Division, State of Hawai'i (Tsuda or Employer) and represents the public employer within the meaning of Hawai'i Revised Statutes (HRS) § 89–2 (1993).

In No. 19858, Poe appeals from the circuit court's affirmance of a declaratory ruling by the Hawai'i Labor Relations Board (Board) [3] holding that Poe was an incumbent to an essential position and not an essential employee. Therefore, Poe was not entitled to standby pay during the April 1994 HGEA strike. Poe argues that the Board's decision ruling that he was not an essential employee was inconsistent with HRS § 89–12(c) (1993).[4]

In No. 20899, Poe appeals from the circuit court's affirmance of an order granting the Employer's motion for summary judgment on Poe's prohibited practices complaint. Poe argues that the motion should have been denied because the Employer's actions interfered with his right to strike.

In No. 19858, we hold that Poe was an essential employee because he satisfied the same requirements as an essential employee. Therefore, we vacate the Board's Decision No. 365.

In No. 20899, we hold that Poe, as an essential employee, was prohibited from striking. Therefore, it was not a prohibited practice for the Employer to give Poe a notice leading him to believe that he could not strike, and we affirm the Board's Order No. 1325.

## I. BACKGROUND

### A. PRELIMINARY FACTS

On April 16, 1994, the Board issued Order No. 1033, concerning, *inter alia*, the facilities

---

1. Lewis Poe is appellant-appellant in both cases.

2. Calvin Tsuda is respondent/appellee-appellee in No. 20899.

3. The Board is appellee-appellee in both cases.

4. Poe did not raise the issue of standby pay in the points of error section of his brief and did not argue this issue in his opening brief. Accordingly, the issue of standby pay is not before this court. Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(D).

and maintenance of the Oʻahu harbors. In Order No. 1033, the Board designated three Tower Operator I positions at Aloha Tower as essential positions. The Board also incorporated its General Orders issued in Decision No. 351, *John Waihee, III,* 5 HLRB 320 (1994). In Decision No. 351, the Board ordered, in part, the following as general orders:

1. The class or position titles identified in the foregoing portion of the order are designated as essential positions.

2. The Employer may designate any or all incumbents in the essential positions as essential employees. Each incumbent in an essential position, regardless of designation as an essential employee, shall notify the Employer of his or her current residence and mailing addresses and telephone number prior to the onset of a strike by [bargaining unit] 03, 04[,] and 13 employees. The Employer shall inform incumbents in essential positions that they may be designated as essential employees and that they are required to supply this information.

3. The Employer shall designate employees to fill essential positions. Each Employer shall give notice to an essential employee in accordance with [HRS § 89–12(c)(2) ]. It is the duty and responsibility of the essential employee to contact the Employer for his or her work assignment. This duty continues throughout the duration of the strike.

A bargaining unit 03 strike began on Monday, April 18, 1994, at 12:01 a.m. Poe continued to work and completed his normal shift from 10:30 p.m., April 17, 1994 to 6:21 a.m., April 18, 1994. Poe was not scheduled to work again until April 21, 1994.

On April 20, 1994, Poe received a letter from Tsuda, dated April 17, 1994. The letter was addressed to Poe and was entitled, "Notice to Essential Employees." It began with the phrase "Dear Essential Employees." The letter was sent to Poe by certified mail, return receipt requested. The notice informed Poe that he was an incumbent in an essential position, but that he had not been scheduled to work and that he might be

selected to fill the position as an essential employee if the need arose. In such event, the Employer would notify Poe of the place, days, and hours to report to work. The notice stated that Poe was to inform the Employer of his current telephone number to ensure such contact. When contacted, Poe would be required to work as scheduled. Failure to appear for work, without good cause, after being notified, would result in discipline or other legal action.

In contrast, Ms. Beverly Miller, also a Tower Operator I, received a notice that expressly designated her as an essential employee. The notice stated, "You have been selected to fill an essential position," and included a work schedule. In addition, the notice warned Ms. Miller that, if she failed to report for work as directed and could not show good cause for her failure to report, she could be subject to discipline or other legal action.

After Poe received the notice from Tsuda, he called Allen Sandry, his supervisor. Sandry had called Poe earlier in the week asking if he was going to work his normal shift, which was after the strike was scheduled to begin. Poe told Sandry he would work on April 21, 1994, because he had received a notice to essential employees. Poe worked on April 21, 1994 and thereafter. The strike ended on April 29, 1994.

B. *POE'S REQUEST FOR A DECLARATORY RULING FROM THE BOARD CLARIFYING WHEN AN EMPLOYEE LEGALLY BECOMES AN "ESSENTIAL" EMPLOYEE WITHIN THE MEANING OR SCOPE OF HRS § 89–12*

On June 8, 1994, Poe filed a petition for declaratory ruling with the Board in Case No. DR–03–54. Poe requested clarification as to when an employee legally becomes an essential employee within the meaning or scope of HRS § 89–12. Poe claimed that he was notified by his employer that he was an essential employee and that he was entitled to standby compensation and/or standby pay during the strike.

After reviewing the letter received by Poe, the Board found that, despite the misleading subject line and salutation, and the method of delivery of the letter, the contents of the letter indicated that Poe was an incumbent. As an incumbent, Poe occupied an essential position but had not yet been designated as an essential employee and would be so designated only after receiving notification of the place, days, and hours to report to work following receipt of a written notice to report to work. The Board further found that there was no basis in the record to establish that the employer directly or constructively placed him on "standby" status, and, therefore, Poe was not entitled to standby compensation.

Based on Poe's petition, on April 11, 1995, the Board issued Decision No. 365, concluding that, pursuant to HRS § 89–12(c), a public employee becomes an essential employee when the employee has been notified by the public employer that he or she has been designated to fill an essential position. Once the employee has been notified that he or she has been designated as an essential employee, pursuant to HRS § 89–12(c)(2), the employee must contact the employer for a work assignment.

Poe appealed the Board's Decision No. 365 to the circuit court. In an order filed February 29, 1996, the circuit court affirmed the decision of the Board.

Poe timely appealed the circuit court's order in No. 19858.

## C. POE'S PROHIBITED PRACTICES COMPLAINT

On April 25, 1994, Poe filed a prohibited practice complaint against Tsuda with the Board in Case No. CE–03–220. Poe alleged that the April 20, 1994 notice led him to believe that he was an essential employee, prevented him from participating in the bargaining unit 03 strike, and interfered with or restrained him from exercising his rights.

In response to Poe's prohibited practice complaint, the Employer filed a motion to dismiss or, in the alternative, motion for summary judgment with the Board. The Employer argued, *inter alia,* that Poe was

only designated as an incumbent, and not as an essential employee, and, therefore, the notice sent by the Employer did not prohibit Poe from participating in the strike.

On May 2, 1996, the Board granted the Employer's motion for summary judgment in Order No. 1325. The Board found that, based upon its prior ruling in Decision No. 365, the notice was clear on its face that Poe had not been designated to work as an essential employee, but was an incumbent, and that he would not become an essential employee until he was notified as such by the Employer. As an incumbent, Poe was not prohibited from participating in a strike, and the Employer did not engage in any prohibited practices.

Poe appealed the Board's Order No. 1325 to the circuit court. In an order filed July 16, 1997, the circuit court affirmed the decision of the Board.

Poe timely appealed the circuit court's order in No. 20899.

## II. *STANDARD OF REVIEW*

This court discussed the standard of review of an appeal from the circuit court's review of an administrative decision in *Konno v. County of Hawai'i,* 85 Hawai'i 61, 937 P.2d 397 (1997).

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. *The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision,* applying the standards set forth in HRS § 91–14(g) to the agency's decision. This court's review is further qualified by the principle that *the agency's decision carries a presumption of validity* and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Id.* at 77, 937 P.2d at 413 (citations omitted) (emphasis added).

HRS § 91–14(g) (1993) ·enumerates the standards of review applicable to an agency appeal and provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■ An agency's findings of fact are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record. *Alvarez v. Liberty House, Inc.,* 85 Hawai'i 275, 277, 942 P.2d 539, 541 (1997); HRS § 91–14(g)(5).

■ An agency's conclusions of law (COLs) are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law. *Hardin v. Akiba,* 84 Hawai'i 305, 310, 933 P.2d 1339, 1344 (1997) (citations omitted); HRS §§ 91–14(g)(1), (2), and (4).

■ "A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." *Price v. Zoning Bd. of Appeals of City and County of Honolulu,* 77 Hawai'i 168, 172, 883 P.2d 629, 633 (1994). When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. *Dole Hawaii Division–Castle & Cooke, Inc. v.*

*Ramil,* 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). "[T]he court should not substitute its own judgment for that of the agency." *Id.* (*citing Camara v. Agsalud,* 67 Haw. 212, 216, 685 P.2d 794, 797 (1984)).

We discussed the review of an award of summary judgment in *Budget Rent–A–Car Systems v. Ricardo,* 85 Hawai'i 243, 942 P.2d 507 (1997).

Under the Hawai'i Rules of Civil Procedure (HRCP), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56 (1993). The evidence should be viewed in the light most favorable to the non-moving party. *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995). On appeal, an order of summary judgment is reviewed de novo under the same standard. *Harris v. DeSoto,* 80 Hawai'i 425, 431, 911 P.2d 60, 66 (1996).

*Id.* at 244, 942 P.2d at 508.

### III.  *DISCUSSION*

#### A.  *POE WAS AN ESSENTIAL EMPLOYEE*

In Decision No. 365, the Board relied upon HRS § 89–2, which defines "essential employee" as "an employee designated by the public employer to fill an essential position." An essential employee is prohibited from participating in a strike. HRS § 89–12(a) (1993). The Board concluded that a public employee becomes an essential employee when the employee is notified by the employer that he or she has been designated to fill an essential position.

In this case, the Board reviewed the letter sent to Poe and found that Poe was an incumbent, and not an essential employee, despite the heading entitled "Notice to Essential Employees" and the method of delivery. According to the Board, Poe was an incumbent because he was notified that he was employed in an essential position and, if he was selected to fill an essential position,

the employer would notify him in writing to report to work; however, Poe had not been selected to fill an essential position. When contacted, Poe was obligated to report to work and, if he failed to do so without good cause, would be subject to disciplinary or other legal action.

The Board noted that the notice sent to Ms. Miller specifically stated that she was designated to fill an essential position and also included a work schedule. The notice to Ms. Miller further stated that, as an essential employee, she was required to work during the strike as scheduled.

■ Under HRS § 89–12, an employee who is included in the appropriate bargaining unit, such as Poe in the instant case, is entitled to participate in a strike unless that employee is an essential employee. An essential employee: (1) must be notified of his or her essential employee status by either (a) personal delivery, (b) certified mail, return receipt requested, or (c) publication; (2) is prohibited from participating in a strike; and (3) is subject to discipline if he or she does not report to work as scheduled during a strike.

In this case, Poe was designated as an "incumbent," which is not defined under HRS Chapter 89. According to the record, an incumbent, such as Poe, occupies an essential position, but has not been scheduled to work. The incumbent is notified of his status in the same manner as an essential employee, that is, by the employer mailing a notice certified mail, return receipt requested, as required by HRS § 89–12(c)(2)(B). In addition, the incumbent must be ready to fill the position as an essential employee if the need arises and may be contacted by the employer to fill the position at the employer's discretion. If the incumbent is scheduled for work during a strike and does not report to work, the incumbent is subject to discipline.

We hold that Poe was an essential employee because he met all of the requirements of an essential employee: (1) Poe received notice of incumbent status by the same means as an essential employee; (2) Poe was effec-

tively prohibited from striking; and (3) Poe was subject to discipline for not working if scheduled to work during a strike. The Employer notified Poe of his incumbent status by certified mail, return receipt requested.[5] Poe was required be ready to report to work when called by the Employer. And, if Poe did not report to work when scheduled, he was subject to discipline. Although Poe was not expressly prohibited from participating in a strike, the requirements that he be available to work during a strike and be subject to discipline if he did not work if scheduled to work effectively denied Poe the right to strike.

Accordingly, because we hold that Poe was an essential employee, we vacate the Board's Decision No. 365.

## B. AS AN ESSENTIAL EMPLOYEE, POE WAS PROHIBITED FROM STRIKING AND THE EMPLOYER DID NOT ENGAGE IN PROHIBITED PRACTICES

■ Poe alleges in his prohibited practices complaint that the Employer engaged in prohibited practices when it sent him the notice informing him of his incumbent status and that his status as an incumbent effectively prevented him from lawfully participating in the strike. We disagree. Because we hold that Poe was an essential employee, the Employer could lawfully prohibit Poe from striking.

Under HRS § 89–12(a), it is illegal for an employee designated as an essential employee to participate in a strike. HRS § 89–12(a). In this case, Poe was an essential employee. As an essential employee, Poe was prohibited from striking, and the notice he received designating him as an incumbent and leading him to believe he could not strike was not a prohibited practice by the Employer. Therefore, we hold that summary judgment in favor of the Employer was properly granted.

■ The circuit court's affirmance of the Board's Order No. 1325 was based on different grounds, i.e., that Poe was not an essential employee and was not prevented from striking. We have held, however, that be-

---

**5.** Additionally, it should be noted that Poe's letter notifying him of incumbent status was entitled

"Notice to Essential Employees" and began with the phrase "Dear Essential Employees."

cause Poe was an essential employee, he could be prevented from striking. We nevertheless affirm the decision of the circuit court. "[W]here the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling." *Jocelyn Delos Reyes v. Kuboyama,* 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) (citations omitted). An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance. *Enos v. Pacific Transfer & Warehouse, Inc.,* 79 Hawai'i 452, 459, 903 P.2d 1273, 1280, *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995).

Accordingly, although relying on different grounds, we affirm the circuit court's affirmance of the Board's Order No. 1325.

## IV.  CONCLUSION

For the foregoing reasons, we vacate the Board's Decision No. 365 because we hold that Poe was an essential employee. We affirm the Board's Order No. 1325 because, as an essential employee, Poe was prohibited from striking.